## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 15 2018, 8:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deidre L. Monroe
Public Defender's Office
Gary, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationships of: J.H., J.P., and Ja.H. (Minor Children),

J.H. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

August 15, 2018

Court of Appeals Case No. 18A-JT-677

Appeal from the Lake Superior Court

The Honorable Thomas P. Stefaniak, Judge

Trial Court Cause Nos.
45D06-1605-JT-116
45D06-1605-JT-117
45D06-1607-JT-179

**Baker, Judge.**

[1] J.H. (Mother) appeals the trial court's order terminating the parent-child relationship between Mother and J.H., J.P., and Ja.H. (collectively, the children). Mother argues that the evidence does not support the termination. Finding the evidence sufficient, we affirm.

# Facts

[2] Mother is the mother of J.H., born in July 2010; J.P., born in September 2013; and Ja.H., born in August 2014.[1] On September 26, 2013, Department of Child Services (DCS) received a report that stated that Mother had tested positive for marijuana when J.P. was born. Mother admitted to using marijuana but stated that she had stopped using approximately one month before J.P.'s birth. On October 8, 2013, the trial court approved an informal adjustment, during which Mother inconsistently participated in services and DCS had difficulty contacting Mother.

[3] On April 14, 2014, DCS received a report that alleged that Mother was using drugs and was physically abusing J.H. DCS family case manager Rebecca Ramon (FCM Ramon) investigated the report and found no bruises on J.H. FCM Ramon found that Mother did not have appropriate sleeping arrangements for J.P.; she gave Mother three days to find a crib or other

---

[1] Mother has a fourth child who was approximately two years old at the time of the termination hearing and who has remained in Mother's care.

appropriate sleeping item for the child. Additionally, Mother submitted a drug screen that tested positive for marijuana, and she admitted to marijuana use.

[4] On April 23, 2014, DCS received a report that alleged that Mother had left J.H. and J.P., who were then three years old and six months old, home alone. FCM Ramon returned to the home; Mother stated that the children had been sleeping when she needed to go to the store, and she had not wanted to wake them. That same day, J.H. and J.P. were removed from Mother's home and placed in foster case.

[5] On April 24, 2014, DCS filed a petition alleging that J.H. and J.P. were Children in Need of Services (CHINS). The same day, the trial court found the children to be CHINS. On June 9, 2014, a dispositional hearing took place, and the trial court ordered Mother to submit to random drug screens; complete an initial clinical assessment and follow all recommendations; participate in parenting education; attend supervised visitation with the children; complete a substance abuse evaluation and follow all recommendations; and participate in homebased casework. The trial court approved J.H. and J.P.'s placement with their maternal aunt.

[6] Sometime after J.H. and J.P. were removed, Mother lost her housing and struggled to obtain other housing. On August 5, 2014, Ja.H. was born; the baby's meconium tested positive for marijuana. Mother also tested positive for marijuana. On August 6, 2014, DCS removed Ja.H. from Mother's care, and on August 7, 2014, DCS filed a petition alleging Ja.H. to be a CHINS. A

hearing took place that same day, and the trial court placed Ja.H. with her siblings with their maternal aunt. On September 29, 2014, Mother admitted to the allegations, and Ja.H. was found to be a CHINS. On January 14, 2015, Mother was ordered to complete a psychological evaluation and participate in homebased therapy. Also in 2015, Mother was pregnant with her youngest child, who is not part of this case; when she was approximately nine months pregnant, Mother was living at a domestic violence shelter. After the child was born, Mother stayed on her own mother's couch, but she testified that her mother made her feel like her youngest child was not welcome.

[7] Meanwhile, by December 2014, Mother had missed at least five visits with the children. Between January 23 and February 23, 2015, Mother missed ten visits. Between July 2014 and July 2015, Mother continued to test positive for marijuana. From June 24, 2015, to July 1, 2015, Mother was in an inpatient substance abuse treatment center. From August 2015 through March 2016, Mother submitted clean drug screens, but after March 2016, Mother again tested positive for marijuana.

[8] In spring 2016, Mother inherited $80,000 following the death of her father. Around this time, Mother was not fully compliant with services. She was not submitting drug screens, and her visits with the children were suspended due to her failure to attend. On May 2, 2016, DCS filed its petition to terminate Mother's parental rights. In May or June 2016, Latrice Roberts joined the case as the new family case manager (FCM Roberts). In September 2016, DCS

secured Mother a place at the same substance abuse treatment center, but Mother refused to go.

[9] In December 2016, Mother entered another facility for a ten-day substance abuse program; at this time, she tested positive for marijuana. Mother completed the inpatient part of treatment, but she did not return for the outpatient component. That same month, Mother accepted Section 8 housing in Tennessee, and moved. In February 2017, she again tested positive for marijuana.

[10] In June 2017, Mother's services were reinstated; she was referred to homebased casework, individual and family therapy, random drug screens, hair follicle screens, and inpatient drug rehab. Mother did not submit drug screens and did not participate in therapy. In July 2017, DCS attempted to place the children in Mother's care, and an Interstate Compact for Placement of Children (ICPC) was filed. However, the home study came back as the apartment being vacant and the ICPC was denied because Mother was not present for the home study.

[11] Mother also had difficulty with her homebased services. She was referred to Angela Ruiz for homebased services, but Ruiz initially had trouble contacting Mother. Shortly before the termination hearing, however, Mother had begun to comply with homebased services, and by November 2017, Mother had begun to participate to find housing in Indiana.

[12] Mother completed a psychological evaluation on November 7, 2017. The evaluation stated that Mother suffered from borderline intellectual functioning

and mild cannabis use disorder. Mother was recommended to participate in individual therapy to help her process her feelings and cope with life's stressors and to participate in substance abuse counseling and education.

[13] At some point during the case, after the children were placed with their maternal aunt, their aunt passed away. Their aunt's daughter began caring for the children. J.H. has Attention Deficit Hyperactivity Disorder. He has received mental health services, which have focused on addressing his behaviors and anger management skills. J.H.'s behavior has improved; he is better able to manage his impulse behaviors and exhibits fewer angry outbursts. His service provider testified that he needs to continue with medication and services as he works on these issues. J.P. has some speech delays; J.P. is not as hyper as J.H., but has begun mimicking his brother's behavior. Ja.H. is quiet, but her vocabulary has improved.

[14] A hearing on DCS's petition to terminate Mother's parental rights took place on November 20, 2017, and January 31, 2018. During the hearing, Mother testified that the money she had inherited was gone; she "had looked out for [her] family" and "had bought a lot of stuff." Tr. p. 38. She also testified that she had spent $4,000 or $5,000 a month on partying, and she had spent approximately $20,000 to decorate the house in which she was living. She further testified that she was expecting to receive another substantial inheritance from her father's estate.

At the time of the termination hearing, Mother did not have independent housing or employment and was again living with her mother. Mother was attending visitation at the time of the hearing. However, FCM Roberts testified that since December 2016, Mother had missed approximately thirty-five percent of her visits. FCM Roberts recommended that Mother's parental rights be terminated and testified that it was in the children's best interests to be adopted. The children's cousin who was caring for them was willing to adopt them. On February 13, 2018, the trial court ordered Mother's parental rights be terminated. Mother now appeals.

# Discussion and Decision

## I. Standard of Review

Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing

evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

[17] Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>>
>> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

## II.  Remedy of Reasons for Removal

[18]   Mother first argues that the trial court erred by finding that there is a reasonable probability that the conditions resulting in the children's removal will not be remedied.  The children were originally removed from Mother's care and custody because Mother left J.H. and J.P., who were then three years old and six months old, home alone, because Mother used marijuana, and because Mother had unstable housing when Ja.H. was born.

[19]   During the CHINS case, Mother continued to use marijuana.  She consistently tested positive for marijuana between July 2014 and July 2015.  Although she made some progress in abstaining from marijuana, she did not maintain her progress and began to use again, testing positive for the drug in December 2016 and in February 2017.  She also admitted to using the drug two months before

the termination hearing. Despite admitting that she uses marijuana as a coping mechanism, at the time of the termination hearing, she had not addressed the underlying cause of her drug use.

[20] Mother also struggled to maintain stable housing. Despite receiving a substantial inheritance during the case, at the time of the termination hearing, Mother did not have independent housing and was living with her mother, who she testified had previously made her feel like her youngest child was not welcome in the home. Further, Mother did not consistently participate in services to fully address the reasons for DCS's involvement. She did not complete substance abuse treatment, did not consistently submit to random drug screens, and did not consistently participate in individual therapy. Mother waited until approximately two weeks before the termination hearing to complete her psychological evaluation.

[21] In addition, Mother did not consistently attend visits with the children. By December 2014, Mother had missed five visits. Between January 23 and February 23, 2015, Mother missed ten visits. At some point during the case, Mother's visits were suspended due to her failure to attend. Although Mother's visits were eventually reinstated, at the termination hearing, FCM Roberts testified that since December 2016, Mother had missed approximately thirty-five percent of her visits.

[22] In sum, over the course of the CHINS case, Mother did not successfully participate with court-ordered services designed to remedy the reasons for the

children's initial removal. Under these circumstances, the trial court did not err by finding that there is a reasonable probability that the conditions resulting in the children's removal will not be remedied.[2]

# III. Children's Best Interests

[23] Mother also argues that the trial court erred by finding that termination is in the children's best interests.

[24] The evidence in the record shows that Mother is unable or unwilling to provide stability and make good decisions that will benefit the children. Mother left her then three-year-old and six-month-old home alone. After they were removed from Mother's care, Mother lost their apartment and struggled to reobtain stable housing. She was homeless for a period of time, during which she lived at a domestic violence shelter and on her mother's couch. At one point during the case, she obtained housing in another state; by the time of the termination hearing, she was back with her mother. Although she could have used her inheritance to obtain stable housing, she instead spent the money on herself and on decorating the house she was renting at the time.

[25] In addition, Mother could not provide the children with a drug-free environment. She did not effectively use the services provided to her; she failed

---

[2] Mother also appears to challenge the trial court's conclusion that there is a reasonable probability that continuation of the parent-child relationship poses a threat to the children's well-being. Because that prong and the one regarding remedy of reasons for removal are phrased in the disjunctive, we need not and will not consider this argument.

to consistently participate in visitation with the children or in individual therapy or successfully complete substance abuse treatment. She did not complete her psychological evaluation until approximately two weeks before the termination hearing.

[26] J.H.'s therapist testified that it was essential for J.H. to have structure and permanency, and she recommended that J.H. remain in his pre-adoptive home. FCM Roberts testified that termination of parental rights and adoption was in the children's best interests.

[27] Mother argues that the trial court failed to credit her with the time she stayed clean, failed to consider that the substance abuse treatment that she attended was not appropriate for a marijuana user, failed to consider her plans to obtain housing with the second inheritance she expects to receive, and failed to acknowledge the visits that she did have with the children. These arguments amount to requests that we reweigh the evidence and second-guess the trial court's assessment of witnesses, which we may not do.

[28] We find that the evidence supports the trial court's conclusion that termination of the parent-child relationship is in the children's best interests.

[29] The judgment of the trial court is affirmed.

May, J., and Robb, J., concur.